UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

----------------------------------------------------------------------X

DUANE SMITH, *as Administrator of the Estate of*
*Barbara Shelton, deceased,* and DUANE SMITH

                             Plaintiffs,

                   -against-

HOME DEPOT U.S.A., INC.

                             Defendant.

----------------------------------------------------------------------X

HOME DEPOT U.S.A., INC.

                       Third-Party Plaintiff,

                   -against-

ROOF DIAGNOSTICS SOLAR & ELECTRIC LLC and
NRG HOME SERVICES, LLC.

                       Third-Party Defendants.

----------------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-04125 (JMA) (LGD)

**FILED**
**CLERK**
1:18 pm, Mar 19, 2024
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

      Presently before the Court is the joint motion by Defendant Home Depot U.S.A., Inc.

("Home Depot"), Third-Party Defendant Roof Diagnostics Solar & Electric LLC ("Roof

Diagnostics"), and Third-Party Defendant NRG Home Services, LLC ("NRG" and collectively,

"Defendants") to enforce the settlement they reached with Plaintiffs during the November 28,

2022, settlement conference with Magistrate Judge Lee G. Dunst.  (<u>See</u> ECF No. 90.)  For the

reasons set forth below, the motion is GRANTED.

# I.    BACKGROUND

## A.    **Procedural History**

On July 6, 2020, Plaintiff Duane Smith commenced this action in state court in his individual capacity and as administrator of the estate of Barbara Shelton.[1]  (ECF No. 1-2.)  The Complaint against Home Depot asserted multiple causes of action under New York law for damages arising out of the alleged disturbance of asbestos during the installation of a generator—which was reportedly purchased from and installed by Home Depot—at Ms. Shelton's home in July 2016.  (See generally, ECF No. 1-2.)  After removing the case to this Court (ECF No. 1), Home Depot brought a Third-Party Complaint against Roof Diagnostics and NRG seeking indemnification and contribution because Roof Diagnostics allegedly installed the generator and NRG is reportedly the successor entity to Roof Diagnostics.  (See generally, ECF No. 10.)

On November 28, 2022, Judge Dunst held a settlement conference and issued a minute order confirming that, during the conference, the parties agreed to financial terms to resolve this case.[2]  (See ECF No. 56.)

On January 3, 2023, Plaintiffs' counsel, Mr. Paul B. Youkilis, filed a letter reporting that he would seek to withdraw "due to a breakdown in the attorney-client relationship."  (ECF No. 57.)  Later that day, counsel for Roof Diagnostics and NRG filed a letter to Judge Dunst reporting that Plaintiffs had not yet signed the written settlement agreement sent to them, which "incorporated the financial terms agreed upon by all parties" during the settlement conference.  (ECF No. 58.)  That letter further stated that Defendants would enforce the settlement.  (Id.)

---

[1]    The Court refers to Duane Smith individually as "Mr. Smith."  The Court refers to Duane Smith in his individual capacity and in his capacity as administrator of Ms. Shelton's estate collectively as "Plaintiffs."

[2]    Judge Dunst held the settlement conference at the parties' request.  (See ECF No. 48 (June 6, 2022, joint letter expressing interest in a settlement conference); ECF No. 52 (minute entry for September 15, 2022, status conference before Judge Dunst confirming the parties' interest in a settlement conference).)

On January 31, 2023, Mr. Youkilis filed a motion to withdraw as Plaintiffs' counsel and obtain a charging lien.  (ECF No. 60.)  On March 31, 2023, Judge Dunst granted Mr. Youkilis's motion to withdraw.  (ECF No. 66.)  Judge Dunst also deferred ruling on Mr. Youkilis's request for a charging lien "until the amount to be recovered by Plaintiff[s], if any, has been finally determined."  (Id. (quoting Joffe v. King & Spalding LLP, 337 F. Supp. 3d 366, 370 (S.D.N.Y. 2018), aff'd sub nom. Joffe v. Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, P.C., 827 F. App'x 35 (2d Cir. 2020)).)  Since then, Plaintiffs have proceeded pro se.

On August 17, 2023, Defendants filed a letter requesting a conference, pursuant to the undersigned's Individual Rules, in anticipation of a motion to enforce the settlement reached during the settlement conference.  (ECF No. 77.)  On October 27, 2023, Mr. Smith responded to Defendants' letter and asserted that Plaintiffs never agreed to a settlement and Mr. Youkilis lacked authority to settle the matter on Plaintiffs' behalf.  (ECF No. 83.)

On January 10, 2024, the undersigned held the pre-motion conference Defendants requested.  (ECF No. 85.)  There, the parties reasserted their conflicting accounts about what took place at the settlement conference.  Accordingly, the Court scheduled a hearing to resolve those factual disputes in connection with Defendants' anticipated motion.   (Jan. 11, 2024, Elec. Scheduling Order); see Gomez v. City of New York (Gomez I), 805 F.3d 419, 424 (2d Cir. 2015) (per curiam) (recognizing that courts generally require an evidentiary hearing to resolve disputes regarding counsel's authority to settle or dismiss claims); Xuguang Chang v. CK Tours, Inc., 605 F. Supp. 3d 529, 534 n.1 (S.D.N.Y. 2022) (similar).

On February 7, 2024, the Court held that hearing.  Messrs. Youkilis and Smith testified. (See generally, Hr'g Tr., ECF No. 90-1.)  Consistent with the schedule subsequently set by the Court (ECF No. 87), briefing for this motion concluded on March 8, 2024.  (ECF Nos. 90, 92).

**B.**     **Facts**

The Court has considered the parties' submissions together with the testimony given before the undersigned during the February 7, 2024, hearing.  The Court's resulting findings of fact concerning the parties' settlement efforts are set forth herein. See Gomez I, 805 F.3d at 424 (holding that, after a hearing, "the court can resolve any conflict in the testimony; it may, for example, disbelieve the client." (quoting Michaud v. Michaud, 932 F.2d 77, 81 (1st Cir. 1991))).

**1.     Relevant Events Prior to the Settlement Conference**

Plaintiffs retained Mr. Youkilis to serve as their counsel on or about January 14, 2019. (Defs.' Hr'g Ex. 1, ECF No. 88-1 at 4; Hr'g Tr., ECF No. 90-1 at 5:7-17).  While he represented Plaintiffs in this case, Mr. Youkilis drafted and filed the Complaint, engaged in motion practice, participated in discovery, and appeared for multiple conferences on Plaintiffs' behalf.  (Hr'g Tr., ECF No. 90-1 at 5:22-6:3; see also, e.g., ECF Nos. 1, 49, 51, 52, 54.)  Mr. Youkilis also engaged in settlement discussions on behalf of Plaintiffs with the attorneys for Defendants.  (Hr'g Tr., ECF No. 90-1 at 6:4-6.)

On June 30, 2022, Mr. Youkilis filed a letter to the Court on behalf of Plaintiffs seeking a settlement conference.  (ECF No. 49).  On September 12, 2022, Mr. Youkilis filed another letter to the Court stating in part that Plaintiffs were "fully committed to settlement." (ECF No. 51)

On October 28, 2022, Mr. Youkilis filed a letter to the Court requesting an extension of time to make a formal settlement demand because Plaintiffs were "awaiting confirmation from one of Plaintiffs' potential experts regarding the matter" and Mr. Youkilis needed until the following month "to complete the due diligence required" to make a demand.  (ECF No. 54; see also Oct. 31, 2022, Order (granting that request).)   Mr. Youkilis later submitted a demand so that the settlement conference could proceed.

4

## 2.      The Settlement Conference

The settlement conference before Judge Dunst commenced on November 28, 2022, at 2:30 PM.  (ECF No. 56.)  Mr. Smith attended that conference, was present when Mr. Youkilis noted his appearance, and did not object to Mr. Youkilis acting as Plaintiffs' counsel.  (Hr'g Tr., ECF No. 90-1 at 7:10-8:2.)   Mr. Smith knew that Mr. Youkilis represented Plaintiffs at the settlement conference.  (Id. at 33:9-13.)

The settlement conference lasted approximately three hours.  (ECF No. 56.)  Mr. Smith did not assert at any time to Judge Dunst or defense counsel that Mr. Youkilis lacked authority to represent him.  (Hr'g Tr., ECF No. 90-1 at 33:14-25).  To begin settlement discussions, Messrs. Smith and Youkilis went to a room separate from Defendants' counsel; the parties then negotiated through Judge Dunst.  (Id. at 8:3-14.)  Messrs. Smith and Youkilis had no difficulty communicating with each other.  (Id. at 10:15-10:20.)  Mr. Smith raised no health concerns, let alone any that might impact his capacity to negotiate and accept a settlement.  (Id. at 9:24-10:1.)  Similarly, Mr. Youkilis did not observe anything that might indicate Mr. Smith lacked the capacity to negotiate and accept a settlement.  (Id. at 10:2-10:14.)

Toward the end of the negotiations, Mr. Smith informed Judge Dunst that Plaintiffs would settle the case for $60,000.  (Id. at 36:9-20.)  When he returned to Messrs. Smith and Youkilis, Judge Dunst reported that Defendants offered $65,000 to settle the case—$5,000 more than Mr. Smith previously requested.  (Id. at 27:22-28:14, 36:16-19.)  That offer required Plaintiffs to dismiss this action with prejudice and release all claims that were asserted and could have been asserted in this case.  (Id. at 17:19-24, 18:24-19:2).  Mr. Smith discussed that offer with Mr. Youkilis and then accepted it.  (Id. at 8:15-9:23; 27:15-28:7.)  Mr. Smith agreed to putting the settlement on the record.  (Id. at 34:5-24.)  Mr. Smith then departed.  (Id. at 35:16.)

5

Counsel returned to the courtroom to put the settlement on the record. Judge Dunst stated, "I can report on the record that there's a tentative settlement that's been agreed to specifically with respect to – for the settlement amount to be paid to plaintiff with . . . currently confidential dollar amount contributions by [Defendants]." (Settlement Conference Tr., ECF No. 76 at 3:20-25.) Judge Dunst also noted that the parties intended to memorialize their settlement in writing. (Id. at 4:1-3.) Counsel agreed on the record to that summary of the settlement. (Id. at 4:6-14.)

### 3.     Relevant Events After the Settlement Conference

Mr. Youkilis left the settlement conference understanding that "there was, in fact, a settlement in place for this case." (Hr'g Tr., ECF No. 90-1 at 11:24-12:2.) That evening, Judge Dunst entered the following minute entry for the settlement conference:

> Tentative settlement, as stated on the record. The parties have agreed to the financial terms of the settlement, subject to finalizing the terms of the settlement agreement to the satisfaction of all the parties. The parties shall update the Court on the status of memorializing the tentative settlement by 1/3/2023.

(ECF No. 56.)

The next day, November 29, 2022, Mr. Youkilis emailed Defendants' counsel confirming the parties settled the case for $65,000 and requesting an agreement memorializing the settlement "before my client decides to change his mind." (Hr'g Tr., ECF No. 90-1 at 13:2-15:2.) At that time, Mr. Youkilis felt the possibility that Defendants might insist on confidentiality or non-disparagement terms "were the only potential concerns that existed regarding resolving this matter" because "all other materials terms of the settlement had been reached." (Id. at 15:10-23.) Mr. Youkilis then informed Defendants' counsel that Plaintiffs would not agree to any confidentiality and non-disparagement restrictions. (Id. at 15:4-9.) Later, Defendants' counsel sent a draft settlement agreement to Mr. Youkilis; Mr. Youkilis had no "issues or concerns with"

that document.[3]  (Id. at 15:24-16:8.)  Mr. Smith, however, did not sign that agreement based on his belief that he was not bound to the settlement reached at the settlement conference.  (See id. at 31:19-32:3.)

## II.   LEGAL STANDARDS

### A.   <u>Enforcing Settlement</u>

"It is well settled . . . that 'a district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'"  Elysium Health, Inc. v. ChromaDex, Inc., No. 22-1059-CV, 2023 WL 7037442, at *3 (2d Cir. Oct. 26, 2023) (quoting Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974) (per curiam)) (brackets omitted).  "Such power is 'especially clear where the settlement is reported to the court during . . . courtroom proceedings.'"  Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) (quoting Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986)).

"[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law."[4]  Murphy v. Inst. of Int'l Educ., 32 F.4th 146, 150 (2d Cir. 2022) (quoting Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002)).  "As a general matter, courts look to the basic elements of the offer and acceptance to determine if there was an objective meeting of the minds sufficient to create a binding and enforceable contract."  Fisher v. Aetna Life Ins. Co., 32 F.4th 124, 136 (2d Cir. 2022) (citing Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 93 N.Y.2d 584, 589 (1999)).  A writing is not required.  "Parties may enter

---

[3]      Emails between counsel and the draft settlement agreement were not introduced into evidence at the hearing.

[4]      This Memorandum and Order relies on both federal common law and New York law because the Second Circuit has "not decided whether federal or state law should govern a motion to enforce a settlement" and "there is no material difference between New York contract law and federal common law regarding the enforceability of oral settlement agreements."  Acun v. Merrill Lynch Pierce Fenner & Smith, Inc., 852 F. App'x 552, 553 n.1 (2d Cir. 2021) (citing Powell, 497 F.3d at 129 n.1) (applying this approach); see Ciaramella v. Reader's Dig. Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997) (similar).

into a binding contract orally, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation." <u>Powell v. Omnicom</u>, 497 F.3d 124, 128 (2d Cir. 2007); <u>see Samuel v. Bd. of Educ. of NYC</u>, No. 12-CV-4219, 2015 WL 10791896, at *3 (E.D.N.Y. Aug. 11, 2015) ("It is beyond question that verbal, in-court settlement agreements may be binding and enforceable, although the agreement was never reduced to writing."), <u>aff'd</u>, 668 F. App'x 381 (2d Cir. 2016).

While courts should "avoid trapping parties in surprise contractual obligations," it is "equally important" that courts "enforce and preserve" preliminary agreements that "were intended as binding, despite a need for further documentation or further negotiation." <u>Murphy</u>, 32 F.4th at 151 (internal quotation marks omitted). "Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, even if a party has a change of heart between the time of the agreement and the time it is reduced to writing." <u>Suarez v. Gakk Rest. Inc.</u>, No. 20-CV-1464, 2021 WL 4123055, at *1 (E.D.N.Y. Sept. 9, 2021) (internal quotation marks and ellipsis omitted); <u>accord</u> <u>U.S. v. Bank of New York</u>, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."); <u>Omega Eng'g</u>, 432 F.3d at 445 ("It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made.").

**B.**   **<u>Plaintiff's Pro Se Status</u>**

Plaintiffs oppose the instant motion <u>pro se</u>. "[I]t is well established that a court is ordinarily obligated to afford a special solicitude to <u>pro se</u> litigants." <u>Rosa v. Doe</u>, 86 F.4th 1001, 1007 (2d Cir. 2023) (quoting <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101 (2d Cir. 2010)) (emphasis added). That treatment includes "liberal construction" of <u>pro se</u> parties' arguments. <u>Id.</u> (quoting <u>Tracy</u>, 623 F.3d

at 101).  This policy is "driven by the understanding that implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." McLeod v. Jewish Guild For The Blind, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (emphasis added; internal quotation marks omitted).  The special solicitude afforded to Plaintiffs here, however, is not unlimited.  "[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" E.g., Peavey v. A. Rosenblum, Inc., 793 F. Supp. 2d 590, 594 (E.D.N.Y. 2011) (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)); see Faretta v. California, 422 U.S. 806, 834 n.46 (1975) (similar).

## III.    DISCUSSION

### A.    Plaintiffs Agreed to the Settlement

The Court first addresses Plaintiffs' argument that they did not agree to the settlement.  (See ECF No. 92 at 4.)  "[T]he decision to settle or otherwise dismiss claims 'rests with the client' and is 'not automatically bestowed on retained counsel.'" Gomez I, 805 F.3d at 424 (quoting Pereira v. Sonia Holdings (In re Artha Mgmt.), 91 F.3d 326, 329 (2d Cir. 1996)) (internal alterations omitted).  Consistent with that principle, the Court determines that Mr. Smith—on behalf of Plaintiffs—accepted $65,000 to dismiss this case and release all claims Plaintiffs asserted or could have asserted in this action.  (See supra Section I.B.2.).

Agency principles compel the same conclusion.  A settlement entered through counsel may only be binding "if the attorney (the agent) had the client's (the principal's) actual or apparent

authority to enter into the agreement."[5]  Hillair Capital Invs., LP v. Smith Sys. Transp., Inc., 640 F. App'x 49, 51 (2d Cir. 2016) (citing United States v. Int'l Bhd. of Teamsters, 986 F.2d 15, 19-21 (2d Cir. 1993)).  The Court concludes that Mr. Youkilis had actual authority, and alternatively had apparent authority, to agree to the settlement on Plaintiffs' behalf.[6]

### 1.      Actual Authority

Mr. Youkilis had Plaintiffs' actual authority to accept the settlement.  "An agent's, and thus an attorney's, actual authority may be inferred from words or conduct which the principal has reason to know indicates to the agent that the agent is to do the act." Gomez v. City of N.Y. (Gomez II), 704 F. App'x 25, 26 (2d Cir. 2017) (quoting Pereira, 91 F.3d at 329) (brackets omitted); see Matter of Elizabeth T., 186 N.Y.S.3d 264, 266 (App. Div. 2nd Dep't 2023) (similar).  The Court credits Mr. Youkilis' testimony that Plaintiffs affirmatively agreed to the settlement and authorized Mr. Youkilis to accept it.  (See Hr'g Tr., ECF No. 90-1 at 8:15-9:23; 27:15-28:7.)  Two key parts of Mr. Smith's testimony bolster that conclusion.  First, Mr. Smith acknowledged that, on behalf of Plaintiffs, he authorized Mr. Youkilis to put the settlement on the record.  (Id. at 34:5-24.)  Second, Mr. Smith admitted that, on behalf of Plaintiffs, he requested to settle the case for five thousand dollars less than the amount ultimately directed to Plaintiffs in the settlement.  (See id.

---

[5]      New York agency principles determine whether Mr. Youkilis was authorized to settle Plaintiffs' claims because the claims arise under New York law and the relevant settlement negotiations occurred in New York.  (See generally, Compl., ECF No. 1-2 (asserting New York law claims)); supra Section I.B.2 (describing the in-person settlement conference); Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989) (holding that New York agency law would determine authority to settle any state law claims because the parties were New York residents and settlement negotiations occurred in New York); see also Int'l Bhd.of Teamsters, 986 F.2d at 20 (holding that federal precedent determines the scope of an agent's authority to settle federal claims).  In any event, applying these principles under federal or New York law yields the same result here.  See Hillair, 640 F. App'x at 52 n.2.

[6]      Federal jurisprudence requires parties defending against enforcement of a settlement entered through counsel to show that their counsel lacked settlement authority.  See Gomez I, 805 F.3d at 424; Int'l Bhd. of Teamsters, 986 F.2d at 20.  By contrast, New York jurisprudence requires a party seeking to enforce a settlement entered through counsel to establish that the opposing attorney possessed settlement authority.  See Pereira, 91 F.3d at 329; Slavin v. Polyak, 470 N.Y.S.2d 38, 39 (App. Div. 2nd Dep't 1984).  For this case, that distinction makes no difference.  "[T]he facts here compel the same conclusion regardless of which party bears the burden of persuasion."  Hillair, 640 F. App'x at 52 n.3.

at 28:12-15, 36:16-19.)   The Court thus concludes that Plaintiffs granted Mr. Youkilis actual authority to accept the settlement.   See Gomez II, 704 Fed. App'x at 26 (affirming conclusion, based on counsel's testimony, that plaintiff granted actual authority to accept settlement); Int'l Bhd. of Teamsters, 986 F.2d at 20 (similar); see also Official Comm. of Unsecured Creditors of Motors Liquidation Co. v. JP Morgan Chase Bank, N.A. (In re Motors Liquidation Co.), 777 F.3d 100, 105 (2d Cir. 2015) (concluding that counsel acted with actual authority based on the clients' express authorization).

Plaintiffs' argument to the contrary based on their retainer agreement with Mr. Youkilis misses the mark.  Plaintiffs contend that retainer agreement prohibited Mr. Youkilis from settling this case without Plaintiffs' written consent.  (See Hr'g Tr., ECF No. 90-1 at 20:8-21:24; ECF No. 92 at 3.)  Plaintiffs, however, mistakenly reverse the meaning of the relevant language.  The retainer agreement provides that "[t]he undersigned . . . agrees not to settle this action in any manner without your prior written consent." (Defs.' Hr'g Ex. 1, ECF No. 88-1 at 1; Hr'g Tr., ECF No. 90-1 at 21:12-15.)  That document specifies that "[t]he undersigned [is] Duane Smith" and "you[]" in the relevant excerpt is Mr. Youkilis's law firm.  (Defs.' Hr'g Ex. 1, ECF No. 88-1 at 1.) As a result, the provision Plaintiffs rely upon purports to limit their ability to the settle the case without obtaining approval from Mr. Youkilis's law firm.  Hence, even if it were enforceable, that provision would not undermine Plaintiffs' grant of actual authority to Mr. Youkilis to settle the case.[7]

---

[7]   That provision of the retainer agreement is plainly unenforceable.   Under New York law, "a clause prohibiting the client from making a settlement of his litigation without the consent of his attorney is void as against public policy."  In re Snyder, 190 N.Y. 66, 74 (1907); see Andrewes v. Haas, 214 N.Y. 255, 258 (1915); Freeman Lewis LLP v. Financiera De Desarrollo Indus. y Commercial S.A., 102 N.Y.S.3d 554, 555 (App. Div. 1st Dep't 2019). The same is true under federal law.  See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, 198 F. Supp. 3d 311, 319 (S.D.N.Y. 2016); see also Fennell, 865 F.2d at 501 ("[T]he decision to settle is the client's to make, not the attorney's.").

### 2.   Apparent Authority

Even if he lacked actual authority, Mr. Youkilis possessed apparent authority to agree to the settlement.   "Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces a third party to believe that an individual has been authorized to act on its behalf."   Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322, 328 (2d Cir. 2010) (quoting Peltz v. SHB Commodities, 115 F.3d 1082, 1088 (2d Cir. 1997)) (brackets omitted).   This authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have an act done on his behalf by the person purporting to act for him."   Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003) (brackets and internal quotation marks omitted); see Hallock v. State, 64 N.Y.2d 224, 231 (1984) (similar).   This authority lies where the principal "remained silent when he had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon."   Hillair, 640 F. App'x at 52 (quoting Sci. Holding Co. v. Plessey Inc., 510 F.2d 15, 25 (2d Cir. 1974)); Rothschild v. Title Guarantee & Tr. Co., 204 N.Y. 458, 462 (1912).

Under these principles, it is well settled that a party cloaks its counsel with apparent settlement authority by appearing with that counsel at a court conference where settlement is reached and placed on the record without objection.  See Hillair, 640 F. App'x at 52; Hallock, 64 N.Y.2d at 231-32; Bernstein v. Harrah's Operating Co., 661 F. Supp. 2d 186, 199 (N.D.N.Y. 2009); Hawkins v. City of N.Y., 833 N.Y.S.2d 894, 895 (App. Div. 1st Dep't 2007); Alvarez v. City of N.Y., 146 F. Supp. 2d 327, 335 (S.D.N.Y. 2001). Cf. Fennell, 865 F.2d at 503 (declining to find apparent authority because "no party participated" in counsel's settlement negotiations or the court conference reporting that settlement).   Therefore, even if he lacked actual authority, Mr. Youkilis possessed apparent authority when he settled the case at the settlement conference.

12

**B.**     <u>The Settlement is Enforceable</u>

The Second Circuit recognizes two types of "preliminary" settlement agreements. <u>Murphy</u>, 32 F.4th at 150-51. A "Type I" agreement "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation." <u>Id.</u> at 150 (quoting <u>Teachers Ins. & Annuity Asso. v. Tribune Co.</u>, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). Such an agreement "is 'preliminary only in the sense that the parties desire a more elaborate formalization of the agreement,' which, although not necessary, is desirable." <u>Id.</u> (quoting <u>Tribune</u>, 670 F. Supp. at 498). "A Type I agreement, by definition, contemplates a future formalization that will likely include some additional terms. But as long as 'there were no issues outstanding that were perceived by the parties as requiring negotiation,' trivial open issues will not prevent the court from upholding a Type I agreement." <u>Id.</u> at 152 (quoting <u>Shann v. Dunk</u>, 84 F.3d 73, 82 (2d Cir. 1996)) (citation omitted); <u>see</u> <u>Vacold LLC v. Cerami</u>, 545 F.3d 114, 128 (2d Cir. 2008) ("[I]f the parties intended to be bound despite the presence of open terms, courts should not frustrate their achieving that objective or disappoint legitimately bargained contract expectations." (internal quotation marks omitted)). Type I agreements "render the parties 'fully bound to carry out the terms of the agreement even if the formal instrument is never executed.'" <u>Vacold</u>, 545 F.3d at 124 (quoting <u>Adjustrite Sys. v. GAB Bus. Servs.</u>, 145 F.3d 543, 548 (2d Cir. 1998)).

By contrast, a "Type II" agreement "is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms <u>that remain to be negotiated</u>." <u>Murphy</u>, 32 F.4th at 150 (quoting <u>Tribune</u>, 670 F. Supp. at 498) (emphasis added). In a Type II agreement, "the parties 'bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement.'" <u>Id.</u> at 151

(quoting <u>Tribune</u>, 670 F. Supp. at 498).  Type II agreements "do not commit the parties to their ultimate contractual objective.  Rather, they bind the parties to the obligation to negotiate the open issues in good faith in an attempt to reach the objective within the agreed framework."  <u>Vacold</u>, 545 F.3d at 124 (internal quotation marks, alterations, and citation omitted); <u>see</u> <u>Adjustrite</u>, 145 F.3d at 548 (similar).

The Second Circuit refers to the four factors articulated in <u>Winston v. Mediafare Entertainment Corp.</u>, 777 F.2d 78, 80-81 (2d Cir. 1985), known as the <u>Winston</u> factors, to determine whether parties reached a Type I agreement.[8]  <u>E.g.</u>, <u>Murphy</u>, 32 F.4th at 151.  The <u>Winston</u> factors are:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

<u>Winston</u>, 777 F.2d at 80.  "No single factor is decisive . . . ." <u>Ciaramella</u>,131 F.3d at 323; <u>see</u> <u>Murphy</u>, 32 F.4th at 151 (holding that the factors "'do not provide us with a talismanic scorecard'" and that "some of these factors may be disregarded when not relevant or helpful to our analysis" (quoting <u>Vacold</u>, 545 F.3d at 125)).  As set forth below, the Court concludes based on the <u>Winston</u> factors that the parties entered into a Type I agreement to settle the case for $65,000.

---

[8]     The Second Circuit "refers to a modified five-factor version of that test" to determine whether parties reached a Type II agreement.  <u>Murphy</u>, 32 F.4th at 151 (citing <u>Arcadian Phosphates, Inc. v. Arcadian Corp.</u>, 884 F.2d 69, 72 (2d Cir. 1989)).  The Court need not engage in that analysis given the below conclusion that the settlement is an enforceable Type I agreement.

## 1.      The First Factor

The first <u>Winston</u> factor considers whether there was an "express reservation" of the right to not be bound absent a written agreement.  <u>Winston</u>, 777 F.2d at 80.  This factor is "frequently [considered] the most important."  <u>Brown v. Cara</u>, 420 F.3d 148, 154 (2d Cir. 2005).

No party reserved the right to not be bound to the settlement absent a written agreement. (<u>See</u> Settlement Conference Tr., ECF No. 76 at 3:17-4:16).  Plaintiffs' summary assertion that Mr. Smith "expressed reservation" to the settlement during the off-the-record portion of the conference (ECF No. 92 at 14) is belied by the evidence.  <u>See</u> <u>supra</u> Section III.A (recounting testimony from Messrs. Youkilis and Smith regarding Plaintiffs' acceptance of the settlement).  As Judge Dunst recognized in his minute entry for the settlement conference, the parties were to simply "memorializ[e]" the settlement they reached.  (ECF No. 56.)  That the parties intended to execute a written agreement reflecting the settlement does not constitute an express or implied reservation of rights.  <u>See</u> <u>Powell</u>, 497 F.3d at 130; <u>Adjustrite</u>, 145 F.3d at 548; <u>Winston</u>, 777 F.2d at 80.

Where, as here, "there is no express reservation, the language and conduct of the parties can nevertheless reveal such an intent."  <u>Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.</u>, 5 F. Supp. 3d 323, 332 (E.D.N.Y. 2014) (citing <u>Winston</u>, 777 F.2d at 81).  The parties' conduct and language here, through the emails counsel exchanged after the settlement conference, confirm that they intended without reservation to settle the case on the terms reached at the settlement conference.  (<u>See</u> Hr'g Tr., ECF No. 90-1 at 13:2-15:2, 15:24-16:8 (describing attorneys' emails)); <u>Geneva Lab'ys Ltd. v. Nike W. Afr. Imp. & Exp. Inc.</u>, No. 19-CV-4419, 2021 WL 7287611, at *5 (E.D.N.Y. Aug. 16, 2021) (holding that emails "confirmed the parties' understanding that a settlement had been reached" at a court conference), <u>report and recommendation adopted</u>, 2022 WL 673257 (E.D.N.Y. Mar. 7, 2022); <u>see also</u> <u>McCalla v. Liberty Life Assurance Co. of Bos.</u>, No.

18-CV-1971, 2020 WL 587003, at *3 (E.D.N.Y. Feb. 6, 2020) (reasoning that attorneys' emails confirmed settlement), aff'd, 839 F. App'x 651 (2d Cir. 2021).

Here, the first Winston factor favors enforcing the settlement because the parties, through counsel, acknowledged their settlement on the record without reserving any rights.[9]  See Powell, 497 F.3d at 130; Aguiar v. New York, 356 F. App'x 523, 525 (2d Cir. 2009); Patel v. Long Island Univ. (Patel II), No. 17-CV-2170, 2023 WL 6211769, at *3-4 (E.D.N.Y. Sept. 25, 2023).  Counsel's communications thereafter confirm that conclusion.  (See Hr'g Tr., ECF No. 90-1 at 13:2-15:2, 15:24-16:8); Geneva Lab'ys, 2021 WL 7287611, at *5; see also McCalla, 2020 WL 587003, at *3.

## 2.   The Second Factor

The second Winston factor considers whether there has been partial performance of the contract.  Winston, 777 F.2d at 80.  "Partial performance favors enforcement when 'one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement.'"  Acun, 852 F. App'x at 554 (quoting Ciaramella, 131 F.3d at 325); see R.G. Grp., Inc. v. Horn & Hardart Co., 751 F.2d 69, 75-76 (2d Cir. 1984) ("[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect.").

Defendants contend that their cessation of litigation, including abandoning their pursuit of discovery Plaintiffs reportedly owed, and their drafting of the agreement memorializing the settlement constitute partial performance.  (See ECF No. 90 at 12.)  The Second Circuit "ha[s] not specifically addressed" whether such actions constitute partial performance.  Acun, 852 F. App'x at 555.  Some courts in this Circuit have found cessation of litigation by "both parties" constitutes

---

[9]      That the parties did not put the specific dollar amount on the public record is of no moment.  See Chang, 605 F. Supp. 3d at 536, 539.

partial performance.  Chang, 605 F. Supp. 3d at 539 (collecting cases).  However, the "lack of any performance of the terms of the settlement, such as payment of the settlement amount, can counterbalance the parties' decision to stop litigating."  Geneva Lab'ys, 2021 WL 7287611, at *6.

Even assuming both sides sufficiently ceased litigating the case, Defendants' argument falls short.  Here, "no payment was made" and cessation of litigation "did not impose any costs" because "little activity beyond these enforcement proceedings has taken place" since the settlement conference.  Patel v. Long Island Univ. (Patel I), No. 17-CV-2170, 2023 WL 6282845, at *5 (E.D.N.Y. July 31, 2023) (collecting similar cases), report and recommendation adopted, 2023 WL 6211769 (E.D.N.Y. Sept. 25, 2023).  Indeed, Defendants' actions are "merely the natural consequences of" pursuing a "written settlement agreement. No party has performed any of the actions to which the parties actually agreed: specifically, [Defendants have] not made any payment . . . and [Plaintiffs have] not given [Defendants] a release."  Alvarado v. Five Town Car Wash, Inc., No. 13-CV-1672, 2014 WL 252015, at *2 (E.D.N.Y. Oct. 11, 2023), report and recommendation adopted, 2014 WL 252015 (E.D.N.Y. Jan. 22, 2014); see Geneva Lab'ys, 2021 WL 7287611, at *6; Nieves v. Cmty. Choice Health Plan of Westchester, Inc., No. 08-CV-321, 2011 WL 5531018, at *4 (S.D.N.Y. Nov. 14, 2011).  At the same time, Defendants could not tender payment because that "ability . . . was thwarted by [Plaintiff]'s change in counsel" and concomitant effort to repudiate the agreement.  Doe v. Kogut, 759 F. App'x 77, 80 (2d Cir. 2019).  Under these circumstances, the second Winston factor is neutral.  See id.; Acun, 852 F. App'x at 555; Patel I, 2023 WL 6282845, at *5; Geneva Lab'ys, 2021 WL 7287611, at *7.

### 3. The Third Factor

The third Winston factor considers whether the oral agreement included all material terms. Winston, 777 F.2d at 80. That is, the Court must consider whether the settlement included all the terms that the parties "perceived to require negotiation" at the time the agreement was reached. Murphy, 32 F.4th at 150 (internal quotation marks omitted); see Vacold, 545 F.3d at 128.

Plaintiffs assert that they did not agree to any terms. (ECF No. 92 at 14-15.) The parties, however, plainly "agreed upon the 'single most important term of the agreement, the settlement amount.'" Chang, 605 F. Supp. 3d at 540 (quoting Gildea v. Design Distributors, Inc., 378 F. Supp. 2d 158, 161 (E.D.N.Y. 2005)); see supra Sections I.B.2, III.A. The only other terms the parties briefly addressed—after the settlement conference—were that Plaintiff would not accept any confidentiality or non-disparagement limitations. (See Hr'g Tr., ECF No. 90-1 at 15:4-23.) That meager discussion (which the record does not reflect Defendants contested) leaves undisturbed that the parties agreed to the single term they deemed worthy of negotiating when they pursued settlement. See Patel II, 2023 WL 6211769, at *12 (holding that confidentiality and non-disparagement terms were immaterial to the parties' negotiations because they were first raised after the settlement conference); see also Murphy, 32 F.4th at 151-53 (holding that "a party cannot reopen a deal by proposing additional terms at a later date" when "there is no evidence . . . to suggest that those new terms were considered open issues in need of negotiation at the time" of agreement); Chang, 605 F. Supp. 3d at 540-41 (similar).

The Court rejects Plaintiffs' summary assertion that "the amount of the settlement" was not "the only material term." (ECF No. 92 at 16.) Plaintiffs do "not contest any of the settlement's terms other than the amount," which as explained above is the single term the parties negotiated and to which they agreed. McCalla v. Liberty Life Assurance Co. of Bos., 839 F. App'x 651, 653

18

(2d Cir. 2021).   Other than that agreed upon dollar value, Plaintiffs have "not identified any material terms that were excluded from the agreement or any terms that were left to negotiate." Green v. New York City Transit Auth., No. 15-CV-08204, 2022 WL 2819738, at *3 (S.D.N.Y. May 10, 2022), report and recommendation adopted, 2022 WL 2819578 (S.D.N.Y. July 19, 2022).  As such, the third Winston factor favors enforcing the settlement.

### 4.    The Fourth Factor

The fourth Winston factor asks whether the agreement at issue is of the type that is usually put in writing.  Winston, 777 F.2d at 83.  "Where, as here, the parties are adversaries and the purpose of the agreement is to forestall litigation, prudence strongly suggests that their agreement be written in order to make it readily enforceable, and to avoid still further litigation."   Id. Accordingly, "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."  Kogut, 759 F. App'x at 81 (quoting Ciaramella, 131 F.3d at 326).  Acknowledging settlement on the record is "significan[t]," serves as a "formal entr[y] to memorialize the critical litigation events," and "perform[s] a cautionary function whereby the parties' acceptance is considered and deliberate."  Powell, 497 F.3d at 131 (internal quotation marks, citations, and ellipsis omitted).  Consequently, "[c]ourts in this District have enforced oral settlements if agreed to before a magistrate judge."  Geneva Lab'ys, 2021 WL 7287611, at *8 (collecting cases).

"That is precisely what happened here—the parties settled their dispute on the record before the magistrate judge."  Kogut, 759 F. App'x at 81; see Powell, 497 F.3d at 131 ("The in-court announcement here functioned in a manner akin to that of a memorializing writing.").  To be sure, the "parties told the Court during the settlement conference they reached agreement . . . And [Plaintiffs' then-]counsel agrees that is what took place."  Patel II, 2023 WL 6211769, at *13.

19

Accordingly the fourth <u>Winston</u> factor favors enforcement of the settlement.  <u>See</u> <u>id.</u> at \*14; <u>Kogut</u>, 759 F. App'x at 81; <u>Acun</u>, 852 F. App'x at 556.

 The Court rejects Plaintiffs' argument that this factor favors them under <u>Winston</u> and <u>Ciaramella</u>.  (ECF No. 92 at 16-17.)  Plaintiffs "overlook[] a critical distinction between those cases and this one—the material terms of the agreements in those cases were not . . . assented to in open court, whereas the material terms here were."  <u>Acun</u>, 852 F. App'x at 556 (first citing <u>Ciaramella</u>, 131 F.3d at 321, 326; and then citing <u>Winston</u>, 777 F.2d at 78–79, 83).

*   *   *

 Because "three of the four factors favor the conclusion that the parties intended to be bound in the absence of a writing," the settlement was an enforceable Type I agreement.  <u>Powell</u>, 497 F.3d at 131; <u>see</u> <u>Acun</u>, 852 F. App'x at 556 (holding that <u>Winston</u> factors favored enforcing settlement reached before a magistrate judge "even if no partial performance had yet taken place at the time Acun disclaimed the terms of the Oral Agreement"); <u>Kogut</u>, 759 F. App'x at 81 (similar); <u>Patel II</u>, 2023 WL 6211769, at \*14 (similar); <u>see also</u>  <u>Acot v. New York Med. Coll.</u>, 99 F. App'x 317, 318 (2d Cir. 2004) ("A party cannot avoid a settlement by refusing to sign settlement papers memorializing the settlement terms reported to the court.")

## IV. CONCLUSION

 For the reasons stated above, Defendants' motion to enforce the settlement is GRANTED.

 Judge Dunst rightfully deferred adjudicating Mr. Youkilis's request for a charging lien until Plaintiffs' recovery in this matter is determined.  (ECF No. 66.)  Now that Plaintiffs will recover $65,000 to settle this case, Mr. Youkilis's request for a charging lien is ripe for adjudication and is

respectfully referred to Judge Dunst for a report and recommendation.[10]   After Judge Dunst adjudicates the amount, if any, of Mr. Youkilis's charging lien, the Court will enter an order to effectuate the settlement and govern distribution of those proceeds.

Although pro se Plaintiffs paid the fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Defense counsel shall serve a copy of this Memorandum and Order upon Plaintiffs and file proof of service by **March 22, 2024**.

**SO ORDERED.**

Dated:   March 19, 2024
         Central Islip, New York

_____
                                        (/s/ JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE

---

[10]   The undersigned refers the charging lien request for a report and recommendation because "it is unsettled in the Second Circuit whether magistrate judges have the authority to . . . determine the amount of a charging lien." Khudai v. Akamai Techs., No. 20-CV-3686, 2023 WL 7174616, at *1 n.1 (S.D.N.Y. Nov. 1, 2023) (collecting cases); see Schreiber v. Friedman, No. 15-CV-6861, 2022 WL 669461, at *3 (E.D.N.Y. Mar. 7, 2022) (similar); Linde v. Arab Bank, PLC, No. 04-CV-2799, 2020 WL 5200924, at *1 (E.D.N.Y. Sept. 1, 2020) (similar).